# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY SHIFFER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:17-CV-978** |
| | : | **(JUDGE MARIANI)** |
| **LIBERTY MUTUAL FIRE** | : | |
| **INSURANCE COMPANY** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.  INTRODUCTION AND PROCEDURAL HISTORY

The above-captioned action was filed by Plaintiff, Timothy Shiffer, in the Lackawanna County Court of Common Pleas against Defendant Liberty Mutual Fire Insurance Company (hereinafter "Liberty Mutual") for breach of contract (*see* Doc. 2).  Defendant thereafter removed this action to federal court on June 6, 2017 (Doc. 1).

Following the completion of fact discovery, Defendant filed a Motion for Summary Judgment (Doc. 15) asserting that Plaintiff's claims against Liberty Mutual are barred by the doctrine of collateral estoppel.  The parties have fully briefed the motion, and it is now ripe for adjudication.  For the reasons set forth below, the Court will grant Defendant's motion.

### II.  STATEMENT OF UNDISPUTED FACTS

Defendant Liberty Mutual has submitted a Statement of Material Facts (Doc. 17) as to which it submits there is no genuine issue or dispute for trial, as well as a number of

exhibits[1] attached thereto. Plaintiff submitted a Response to the Statement of Material Facts (Doc. 25), with the result being that the following facts have been admitted except as specifically noted.

The above-captioned action arises out of a two-car accident that occurred on March 14, 2013, when Timothy Shiffer's car was hit by a vehicle driven by Ann Malysa. (Doc. 17, at ¶ 1). Shiffer seeks to recover underinsured motorists coverage pursuant to his insurance policy provided and underwritten by Liberty Mutual Fire Insurance Company, policy number A02-281-125861-60 2 9, with effective dates from August 14, 2012, to August 14, 2013 (hereinafter the "Policy"). (*Id.* at ¶ 2).

Shiffer's Policy contains a section entitled "Underinsured Motorists Coverage – Pennsylvania (Stacked)", which includes, in relevant part, the following provision:

INSURING AGREEMENT
A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
   1. Sustained by an "insured"; and
   2. Caused by an accident.

---

[1] Of particular note, Defendant's exhibits included, but were not limited to: Shiffer's insurance policy in effect at the time of the accident; the Binding Arbitration Agreement entered into in the third party action as well as Shiffer's arbitration briefs and the Award of Arbitrator; and Plaintiff's deposition taken in the present action. Plaintiff does not challenge the authenticity, content, or completeness, of any of these documents and attached a majority of these documents as exhibits to his brief in opposition to Defendant's motion for summary judgment (*see* Doc. 18, Ex. A-D). In setting forth the statement of undisputed facts and explaining its analysis in this case, the Court has cited to, and relied upon, the contents of these indisputably authentic documents as necessary.

("Policy", Doc. 17-1, Ex. 2, at 45; *see also*, Doc. 17, at ¶ 3). The Policy further defines the

term "underinsured motor vehicle" as follows:

> C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any
> type to which a bodily injury liability bond or policy applies at the time of the
> accident but the amount paid for "bodily injury" under that bond or policy to
> an "insured" is not enough to pay the full amount the "insured" is legally
> entitled to recover as damages.

("Policy", Doc. 17-1, Ex. 2, at 45).

At the time of the car accident at issue, Ann Malysa maintained an automobile

insurance policy with Allstate which provided up to $300,000.00 in liability coverage. (Doc.

17, at ¶ 6).[2]

Plaintiff filed a separate lawsuit against Malysa in the Court of Common Pleas of

Lackawanna County (hereinafter "third party claim") as a result of the March 14, 2013 car

accident. (*Id*. at ¶ 7). Shiffer and Malysa, through their respective counsel, agreed to submit

the third party claim to a "binding arbitration" and entered into a written "Binding Arbitration

Agreement" signed by both Shiffer and his counsel on December 20, 2016. (*Id.* at ¶ 8; *see*

*also*, Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A).[3]

---

[2] Plaintiff "admit[s]" Defendant's statement of fact that Malysa was insured by Allstate at the time of
the accident. (Doc. 25, at ¶ 6). However, in Plaintiff's "Counter Statement of Material Facts", he asserts
that "[a]t the time of the accident, Ann Malysa was insured by Geico". (Doc. 19, at ¶ 8). In addition, the
"Binding Arbitration Agreement" between Shiffer and Malysa is signed by a claims manager for Geico
Casualty Company. (*See* Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A). Nonetheless, this
discrepancy is of no importance. Regardless of whether Malysa was insured by Allstate or Geico, it is
undisputed that her insurance company provided up to $300,000.00 in liability coverage. (Doc. 17, at ¶ 6;
Doc. 25, at ¶ 6; Doc. 19, at ¶ 9).

[3] Although Plaintiff responds that paragraph 8 of Defendant's statement of fact is "[a]dmitted in part
and denied in part" (Doc. 25, at ¶ 8), Plaintiff does not deny the factual assertions set forth in this statement

3

Shiffer testified at his deposition in the present action that he chose to sign the binding arbitration agreement, that nothing prevented him from reading it before he signed, that he did not make any changes before he signed it, and that he was represented by counsel when he signed it. (Doc. 17, at ¶ 9).

Pursuant to the Binding Arbitration Agreement, "[t]he Arbitrator will make his decision regarding all disputed issues using the law of this jurisdiction." (Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A, at ¶ 1). The Agreement provided that "[t]he parties agree that the decision of the Arbitrator is final and binding with no right of re-hearing or appeal in any forum or court, and that any award ultimately rendered will constitute full settlement of all claims submitted to this arbitration." (*Id.* at ¶ 2; *see also*, *id.* at ¶ 10 ("If the Arbitrator's Award less the credits and off-sets falls within the low/high parameters [$30,000.00/$300,000.00], that sum is the amount that Defendant [Malysa] shall pay Plaintiff [Shiffer] as full and final settlement of this claim.")). The Binding Arbitration Agreement further contained a statement

---

of fact. Rather, Plaintiff's partial denial is premised on an assertion that the agreement was not binding "as to any potential underinsured motorist claim that Plaintiff would have against Defendant [Liberty Mutual]." This argument does not serve as a proper denial of Defendant's statement of fact, and the Court deems this factual statement to be admitted.

Plaintiff provides similar "admitted in part and denied in part" responses in paragraphs 10, 13, and 17, of his response to Defendant's statement of material facts, each time stating that the arbitration and resulting agreement are not "binding" on any underinsured motorist claim that Plaintiff now asserts against Liberty Mutual. However, Defendant's statements of fact in those paragraphs are limited to factual assertions and do not contain any legal conclusions that the arbitration agreement is binding as to any underinsured motorist claim that Plaintiff is now asserting. Because Plaintiff does not deny the factual assertions set forth by Defendant in paragraphs 10, 13, and 17, the Court also deems those paragraphs to be admitted.

that "[t]his agreement is not intended to prevent the Plaintiff from pursuing an underinsured motorist claim against his own insurance company." (*Id*. at ¶ 16).

Pursuant to the signed "Binding Arbitration Agreement", the third party claim proceeded to an arbitration hearing on or about January 4, 2017, before Judge Thomas A. Wallitsch (Ret.), as the sole arbitrator. (Doc. 17, at ¶ 10). In connection with the binding arbitration of the third party claim, Shiffer submitted two arbitration briefs and exhibits to Judge Wallitsch and testified at the hearing. (*Id*. at ¶¶ 11, 12). Shiffer was represented by counsel throughout the entirety of his third party claim against Malysa. (*Id*. at ¶ 14).

In Plaintiff's "Arbitration Brief on Behalf of Plaintiff, Timothy G. Shiffer", submitted in the third party claim, Plaintiff's counsel alleged that "[a]s a result of the [accident with Malysa], Mr. SHIFFER sustained a cervical disc disruption at C5-C6, C6-C7 central disc protrusion, and L3-4 and L4-5 disc bulging." (Plaintiff's Arbitration Brief, Doc. 17-1, Ex. 3-B, at 2). Plaintiff's Brief further asserted that:

> According to Dr. Bednarz, Dr. Wolk, Dr. Henderson, and Dr. DePietro, Mr. SHIFFER will continue to suffer from his injuries into the future since they have not resolved. Further, Dr. Henderson has discussed with Mr. Shiffer an anterior cervical fusion at C4-6 with the likelihood of a multilevel fusion with instrumentation. Accordingly, Mr. SHIFFER, is seeking future damages, past and present damages.

(*Id*. at 5-6). (*See also*, *id*. at 7 (Plaintiff "has been totally disabled from his pre-injury employment as a truck driver and will continue to suffer continued pain and flare-ups from his injuries"); *id*. (Plaintiff "is also seeking compensation for his past loss of income . . . , and the diminution of his future earning capacity and economic horizons"); *id*. at 8 ("Plaintiff was

5

and is presently unable to perform all of the physical demands of her [sic] pre-injury

position" and Plaintiff's "treating physicians have opined that due to his injuries and

limitations imposed he will never be able to perform that position"); id. at 8-9 ("Plaintiff is

seeking both past, present and future damages in each of the categories of damages

indicated above")).

In Plaintiff's second Arbitration brief submitted to Judge Wallitsch, he summarized

his injuries as "severe and permanent injuries to his cervical and lumbar spine." (Doc. 17-1,

Ex. 3-C, at 1). Plaintiff's brief set forth the opinions of several physicians who had

diagnosed him with, among other injuries, cervical strain, thoracic strain, lumbar strain, and

neck and back pain (id. at 2). Plaintiff further asserted that an MRI of his cervical spine on

August 6, 2013,

> revealed C4-5 mild/moderate left paracentral disc protrusion impressing on the
> ventral thecal sac with mild deformity of the central spinal cord, C5-C6 mild
> broad-based disc bulge with osseous ridging more eccentric to the right
> impressing upon the ventral thecal sac causing mild flattening of the central
> spinal cord with moderate right neural foraminal narrowing, and C6-C7 minimal
> central disc protrusion impressing upon the ventral thecal sac.

(Id. at 3). (See also, id. (stating that Dr. Lyness diagnosed Plaintiff with "C4-5 small right

disc bulge with mild neural foraminal stenois and C5-6 left disc osteophyte with mild neural

foraminal stenosis"); id. at 3-4 (stating the Dr. Wolk "diagnosed myofascial pain of thoracic

spine, lumbosacral spine and cervical spine from sprain/strain type of injuries, aggravation

of underlying degenerative problems within the cervical spine particularly at the right C5-6

level with aggravation of underlying degenerative disc disease and foraminal stenosis

6

resulting in some radicular symptomology"); *id.* at 4 (stating that Dr. Bednarz "diagnosed cervical disc disruption at C5-C6 and lumbar myoligamentous sprain/strain with sight sided sciatica"); *id.* at 4, 5 (stating that Dr. Henderson twice "diagnosed cervical degenerative disc disease with radiculopathy and lumbar degenerative disc disease with radiculopathy")).

Plaintiff's counsel attached twenty-five exhibits to his second Arbitration brief, including Emergency Room records and physical therapy records, MRIs of Cervical Spine, and reports by Drs. Bednarz, Wolk, Henderson, Lyness, Lawrence, and DePietro.

Following binding arbitration of the third party claim, Judge Wallitsch issued an "Award of Arbitrator" on January 9, 2017, in the amount of $214,298.37. (Doc. 17, at ¶ 13).

Two days later, on January 11, 2017, Plaintiff's counsel wrote to Liberty Mutual and indicated, in part:

> Please accept this correspondence as notice of presenting an underinsured motorist claim on behalf of Mr. Shiffer.
>
> We have received an offer to settle Mr. Shiffer's third-party claim in the amount of Two Hundred Fourteen Thousand Two Hundred Ninety-Eight Dollars and thirty-seven cents ($214,298.37) which Mr. Shiffer would like to accept in lieu of pursuing further litigation in the third party claim. . . .
>
> Please have an underinsured motorist adjuster assigned to this claim. . . .

(Doc. 17, at ¶ 15; *see also*, Doc. 17-1, Ex. 3-E).

On January 20, 2017, a claims department representative for Liberty Mutual responded to Plaintiff's counsel stating, in part:

7

Please be advised that we have waived our subrogation rights against Ann Malysa and Robert Malysa, for this loss. We have no objection to your client completing a release for Geico.

Please be advised that we will be taking credit for the tortfeasor's full liability limits of $300,000 in the Underinsured Motorist claim.

(Doc. 17, at ¶ 16; *see also*, Doc. 17-1, Ex. 3-F).

Prior to requesting and subsequently receiving Liberty Mutual's consent to settle, Shiffer did not disclose to his insurance company that the third party claim had already proceeded to a binding arbitration. (Doc. 17, at ¶ 17).

Shiffer signed a "Release and Settlement Agreement" between himself and Ann Malysa on January 20, 2017. (*See* Release and Settlement Agreement, Doc. 17-1, Ex. 3-G). The release amount was $214,298.37, the same amount of the third party binding arbitration award. (*Id.*). At Shiffer's deposition, he testified that it was his choice to sign the release and that he was not forced to sign it, and that he was represented by counsel when he signed it. (Doc. 17, at ¶ 19; Dep. of Shiffer, at 17).

On January 30, 2017, "upon Praecipe for Discontinuance", the Prothonotary for the Court of Common Pleas of Lackawanna County issued an Order of Discontinuance in Shiffer's action against Malysa and discontinued the action with prejudice. (Doc. 17-1, Ex. 3-H; *see also,* Doc. 17, at ¶ 20).

On February 14, 2017, Liberty Mutual sent an email to Plaintiff's counsel requesting that counsel "[p]lease advise whether or not this matter went to arbitration or mediation in the third party claim. If it did, I will need a copy of the arbitration or mediation agreement."

8

(Doc. 17, at ¶ 21). That same day, Plaintiff's counsel responded to Liberty Mutual stating, in part, that "Mr. Shiffer's third party case was concluded with the execution of a third party release and settlement agreement which I previously forwarded to you when we sought consent to settle." (Id. at ¶ 22).[4]

On March 3, 2017, Liberty Mutual again requested a copy of the arbitration or mediation agreement with respect to the third party claim. (Id. at ¶ 23). On March 6, Plaintiff's counsel responded to Liberty Mutual stating that "the manner in which the third party case was negotiated and settled between Mr. Shiffer and Geico is not and should not be an issue or concern of Liberty Mutual regarding settlement of his underinsured motorist claim. You have granted consent to settle and waiver of subrogation." (Id. at ¶ 24).[5]

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

---

[4] Plaintiff "admit[s] in part" paragraphs 21 and 22 of Defendant's statement of material facts. However, again, to the extent Plaintiff is denying Defendant's statements of fact, such denials are improper as he does not deny the factual allegations set forth by Defendant and admits that those statements of fact set forth the partial contents of the emails quoted by Defendant. The Court therefore deems paragraphs 21 and 22 as admitted.

[5] Again, Plaintiff "admit[s] in part and denie[s] in part" paragraphs 23 and 24 of Defendant's statement of material facts. However, for the same reasons that this Court has previously explained, i.e. that Plaintiff does not deny any factual assertions but instead only premises his denials on legal arguments, the Court deems paragraphs 23 and 24 as admitted.

9

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380

(2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no *genuine* issue of *material* fact.
> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

Liberty Mutual asserts that it is entitled to summary judgment because "the Doctrine

of Collateral Estoppel precludes Plaintiff from pursuing a claim for underinsured motorists

coverage where he submitted his claim against the alleged underinsured motorist to a

binding arbitration and the arbitrator's award was significantly less than the liability coverage

available to the alleged underinsured motorist". (Doc. 16, at 3). In particular, Liberty Mutual

argues that the issue of damages sustained as a result of the March 14, 2013, car accident

has been fully litigated, and a final determination made, due to Plaintiff having presented his

claim to binding arbitration where Shiffer had "a full and fair opportunity to present his case,"

"submitted two arbitration briefs and voluminous exhibits including multiple expert reports,"

and testified at the hearing. (*Id.* at 4).

11

In response, Plaintiff contends that the arbitration agreement does not collaterally

estop his current claim as "the criteria for collateral estoppel have not been met" and,

additionally, that the Court "must honor the terms of an Arbitration Agreement which permits

the Plaintiff to pursue his Underinsured Motorist's Claim." (Doc. 18, at 4).

Under the principles of collateral estoppel "once a court has decided an issue of fact

or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit

on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S.

90, 94 (1980)(citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). Pennsylvania

law on the doctrine of collateral estoppel governs in a diversity action, and a suit will be

barred by the doctrine of collateral estoppel under Pennsylvania law when:

> (1) the issue decided in the prior case [is] identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) [t]he party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) [t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Nat'l Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009)(citing

*Rue v. K-Mart Corp.*, 552 Pa. 13, 713 A.2d 82, 84 (1998)).

Pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"),

75 Pa. C.S. § 1701, *et seq.*, an "underinsured motor vehicle" is a "[a] motor vehicle for which

the limits of available liability insurance and self-insurance are insufficient to pay losses and

damages." 75 Pa. C.S. § 1702. In Pennsylvania, "a plaintiff is collaterally estopped from

asserting a claim for damages against a tortfeasor where the plaintiff has already pursued

12

the same claim and been awarded full compensation in a prior uninsured motorist action. Full compensation is demonstrated where the amount awarded is less than the coverage of the insurance." *Sterling v. Fineman*, 630 A.2d 1224, 1228 (Pa. Super. Ct. 1993)(citing *Incollingo v. Maurer*, 575 A.2d 939 (Pa. Super. Ct. 1990)).

Here, Plaintiff argues that the criteria for collateral estoppel have not been met because "Plaintiff fail[ed] to receive a final judgment on the merits, but also . . . did not have a full and fair opportunity to litigate the issue in the arbitration proceeding." (Doc. 18, at 9). Plaintiff does not dispute Defendant's assertion that the first and third prongs of collateral estoppel have been met, and upon review of the record, it is clear that these prongs have been satisfied: the issues decided in the prior case are identical to the ones presented in this case[6] and the party against whom collateral estoppel is asserted, i.e. Shiffer, was a party to the prior action[7].

---

[6] Liability for the accident is not in dispute here. Further, in Plaintiff's Complaint in the present action, he asserts that as a result of the accident, he has suffered the following injuries: "myofascial pain syndrome cervical, lumbosacral and thoracic spine"; "aggravation of underlying degenerative problems within the cervical spine particularly at the right C5-6 level with aggravation of underlying degenerative disc disease and foraminal stenosis resulting in radicular symptomology"; and "disc bulging at L3-4 and L4-5 levels." (Doc. 2, at ¶ 6). As evidenced in this Court's statement of undisputed facts, *supra*, these claimed injuries are identical to those set forth by Plaintiff's counsel in his briefs submitted during the Arbitration proceedings (*see* Doc. 17-1, Ex. 3-B, 3-C). In addition, Plaintiff's Complaint alleges that he is entitled to recover for past and future medical expenses, loss of earnings and impairment of his future earning capacity, pain and suffering, and loss of enjoyment of life. (Doc. 2, at ¶¶ 7-10). Plaintiff's Arbitration briefs reveal that these same categories of damages were requested by Plaintiff at the Arbitration.

[7] The fact that Defendant Liberty Mutual was not a party to the prior action is of no consequence when deciding whether the third element of collateral estoppel has been met. *See Incollingo v. Maurer*, 575 A.2d 939, 941 (Pa. Super. Ct. 1990) ("There is no requirement under the doctrine of collateral estoppel that the party raising the defense be involved in the original action, but only that the party against whom it is being raised was a party in the initial proceedings."). *See also*, *Phillip v. Clark*, 560 A.2d 777, 780 (Pa. Super. Ct. 1989) ("'Collateral estoppel may be used as either a sword or a shield by a stranger to the prior

13

The general proposition that a plaintiff, after having the issue of damages determined through arbitration, may then be barred by the doctrine of collateral estoppel from proceeding in a separate civil action for the same damages, has long been established in Pennsylvania. *See e.g. McNally v. Dagney*, 510 A.2d 722 (Pa. Super. Ct. 1986) (noting that "[t]o the extent that appellants are submitting the same *claims,* appellees may be correct in their assertion that appellants are collaterally estopped from relitigating the *amount of damages* awarded on *those claims.*") (italics in original); *Phillip v. Clark*, 560 A.2d 777 (Pa. Super. Ct. 1989) (finding appellants were collaterally estopped from receiving damages from appellee where "[a]ppellants [were], in essence, attempting to once again litigate the exact same matter as litigated in the arbitration proceedings. The award there was based upon injuries received in the collision with appellee. Appellants, in the present controversy, are simply asserting that the damages awarded were insufficient to fully compensate them. However, the award of the arbitrators speaks contrarily. Appellants were not even awarded the full extent of the uninsured motorist coverage available."); *Incollingo v. Maurer*, 575 A.2d 939 (Pa. Super. Ct. 1990).

In *Incollingo v. Maurer*, the plaintiff, William Incollingo, was involved in an automobile accident wherein Keith Alan Maurer swerved into oncoming traffic in order to avoid another vehicle, which was never identified, which had suddenly stopped. Incollingo brought an

---

action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action.'")(quoting *Mellon Bank v. Rafsky*, 535 A.2d 1090, 1093 (Pa. Super. Ct. 1987)).

action against his insurance carrier under the uninsured motorist provisions of the policy, which provided for a maximum recovery of $90,000, and an arbitration panel found the driver of the "phantom" vehicle liable for negligence and awarded Incollingo $70,000 in damages. Incollingo thereafter commenced a civil action against Maurer and his employer, Maurer Enterprises, Inc., seeking damages for personal injuries, lost earnings, and diminution of earning capacity. 575 A.2d at 939-940. The Court of Common Pleas entered partial summary judgment in favor of Maurer and his employer on the issue of damages as "the full amount of compensation damages to which plaintiff . . . is entitled as a result of injuries sustained in the subject motor vehicle accident has been set at $70,000.00." Id. at 940. On appeal, the Superior Court of Pennsylvania affirmed the lower court's decision, finding that Incollingo's claim of damages was barred by the doctrine of collateral estoppel. The Superior Court found that the first prong of collateral estoppel was met since the issue of damages was "fully presented" to the arbitrators and the arbitration panel "expressly" found in favor of Incollingo and against his insurance carrier as to liability and awarded damages accordingly. The Court explained that "[t]he second requirement that final judgment in the previous action was rendered on the merits of the issue was met and the judgment has been satisfied [and t]he third requirement has also been met" as Incollingo was a party to the arbitration. Id. at 941. With respect to the fourth requirement of a collateral estoppel analysis, the Superior Court reasoned:

> The fourth requirement that the party against whom the defense is raised must have had a full and fair opportunity to litigate the issue was also met. Every

15

opportunity was given to Mr. Incollingo at the arbitration to present his claim as to all damages and he presented his case on that issue. At arbitration, the plaintiff testified as to the physical injuries which he sustained in the accident, the medical treatment which he received for the injuries, the limitations upon his ability to work as a tree surgeon, the effect of his injuries upon his business, and the impact of those injuries as they related to his daily activities. The appellant described his continuing medical treatment, together with the physical pain and psychological injuries which he alleged resulted from the accident. The appellant's counsel, in his argument to the arbitration panel, contended that the plaintiff had sustained permanent injuries and that he was still under treatment for injuries sustained. The arbitrators were apprised of the full range of the appellant's claims. The appellant also submitted extensive documentation pertaining to his damages, including copies of medical records, reports, and bills which related to both his physical and psychological injuries. The appellant also submitted the report of an economic expert which addressed the issue of plaintiff's loss of past and future earnings.

*Id.*

Although in *Incollingo*, the plaintiff first sued his own insurance company, and

subsequently an individual involved in the accident, which presents the inverse sequence of

legal actions as that in the present case, the Court in *Incollingo* made clear that this

difference does not alter the collateral estoppel analysis. As explained by the Court,

Mr. Incollingo could have chosen to sue the defendants below [Maurer and Maurer Enterprises] for personal injuries and lost earnings, as well as diminution of future earnings. Had he elected to do this and the matter had been fully litigated in the Court of Common Pleas, resulting in full recovery for all damages that he suffered, he could not then have proceeded under his uninsured motorist policy to recover for the same damages from his own insurance company. [Incollingo] elected to recover damages from his own carrier and was awarded an amount to compensate him for all of his damages, even though it was an amount less than his insurance coverage. Although [Incollingo] sought greater damages than awarded by the arbitrators, this does not entitle him to a duplication of the damages in a civil action.

*Incollingo*, 575 A.2d at 943. The Superior Court's reasoning in *Incollingo* has repeatedly been cited in similar insurance actions involving the application of Pennsylvania law. *See e.g., Sterling v. Fineman*, 630 A.2d 1224 (Pa. Super. Ct. 1993); *Harvey v. Liberty Mutual*, 8 F.Supp.3d 666 (E.D. Pa. 2014).

Here, as previously explained, Shiffer only disputes that the second and fourth prongs of collateral estoppel have been established.

With respect to the second prong of the collateral estoppel analysis, Plaintiff has failed to demonstrate a genuine dispute as to Defendant's factually and legally supported position that there was a final judgment on the merits in the prior action.

It is well-established that an arbitration award can constitute a final judgment on the merits and collaterally estop a party from litigating the same issues and claims raised in the arbitration. In Pennsylvania, an arbitration award is "final" when it has been judicially confirmed or when no appeal is taken from an unconfirmed award. *Novinger Gp., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 5378288, at *11 (M.D.Pa. 2008). *See also, e.g., Dyer v. Travelers*, 572 A.2d 762, 764 (Pa. Super. Ct. 1990) ("An arbitration award from which no appeal is taken has the effect of a final judgment on the merits."); *Ottaviano v. Se. Pa. Transp. Auth.*, 361 A.2d 810, 814-815 (Pa. Super. Ct. 1976) ("An award of arbitrators from which no appeal is taken has the effect of a final judgment. . . . An unappealed from award is final and estops the party against whom it is made from proceeding further with the same cause of action.")(internal citations and quotation marks omitted); *Brody v. Hankin,*

299 F.Supp.2d 454, 459 (E.D. Pa. 2004) ("[A]n arbitration award, unless and until invalidated, creates or authoritatively declares rights even as a judgment does and further litigation of a claim submitted to an arbitrator is precluded by the entry of an award thereon."), *rev'd on other grounds,* 145 F.App'x 768 (3d Cir. 2005).

Here, it is undisputed that although the arbitration award was not judicially confirmed, no appeal was taken from the arbitration award. However, Plaintiff argues that the award does not constitute a final judgment on the merits because "the Arbitration Award contained language which prevented the parties from appealing the Award" and that Plaintiff "agreed to such language only because he bargained for the benefit of reserving his right to pursue his underinsured motorist's claim." (Doc. 18, at 10).

Tellingly, Plaintiff does not quote the language in the Arbitration Agreement which he implies supports his position. Pursuant to the Binding Arbitration Agreement, "[t]he parties agree that the decision of the Arbitrator is *final and binding* with no right of re-hearing or appeal in any forum or court, and that any award ultimately rendered will constitute *full settlement* of all claims submitted to this arbitration." (Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A, at ¶ 2). The Binding Arbitration Agreement further provides that "[i]f the Arbitrator's Award less the credits and off-sets falls within the low/high parameters, that sum is the amount that Defendant [Malysa] shall pay Plaintiff [Shiffer] as *full and final settlement* of this claim." (*Id.* at ¶ 10). Thus, despite Plaintiff's vague assertions to the contrary, the language of the Agreement demonstrates that the parties clearly contemplated that any

arbitration award would be considered a full and final settlement of the claims presented to the Arbitrator.[8]

In addition, Plaintiff does not present any legal support for his assertion that, because a clause in an arbitration agreement precludes a party from taking an appeal, this prevents an arbitration award from becoming "final". Here, Plaintiff and his counsel voluntarily agreed to enter into binding arbitration, and as counsel admits, voluntarily agreed to language precluding an appeal as the result of his bargaining. Plaintiff's argument that he included language in the Arbitration Agreement for the purpose of avoiding any award from becoming "final" borders on an admission by counsel that he purposely contemplated entering into a potentially fraudulent agreement in the event he was dissatisfied with the arbitrator's award.

With respect to the fourth element of the collateral estoppel analysis, Shiffer has again not provided any legal basis, or factual dispute, to demonstrate an issue as to whether he was provided a full and fair opportunity to litigate the issues in the prior action.

Plaintiff asserts "the Third Circuit recognizes that it would be unfair to apply collateral estoppel to a Plaintiff's case if the arbitrator was not bound by the rules of evidence or prevailing caselaw because the Plaintiff cannot be said to have fully litigated his/her case." (Doc. 18, at 11-12). Specifically here, Plaintiff argues that he was that he was not provided

---

[8] The Court again notes that Plaintiff has not disputed Defendant's assertion that the claims presented during the arbitration are identical to the claims in the present case.

a full and fair opportunity to litigate the issues in the arbitration action because "the

Arbitration Agreement specifically limited medical testimony to paper reports" and "provided

that no Hearsay objections would be entertained regarding the medical evidence." (Doc.

18, at 12).

> Pursuant to the Binding Arbitration Agreement,

> Any party intending to call an expert witness at the arbitration shall notify all parties in writing at least one week prior to the arbitration. However, for purposes of this arbitration, no live or videotaped medical testimony will be required. All documents, including medical records and reports, will be received into evidence, and there will be no hearsay objection to the receipt of same, so long as copies of all such documents have been provided to opposing counsel prior to the hearing.

(Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A, at ¶ 6).

Plaintiff's arguments again appear to purposely misrepresent the clear language of

the Arbitration Agreement. Although, citing to paragraph 6 of the Arbitration Agreement,

*supra*, Plaintiff asserts that "the Arbitration Agreement specifically limited medical testimony

to paper reports" (Doc. 18, at 12), the Agreement does not state that the medical testimony

is limited to paper reports, but rather that "no live or videotaped medical testimony will be

*required*" (emphasis added). This language thus does not mandate that medical testimony

be limited to paper reports as Plaintiff suggests. Furthermore, the Arbitration Agreement

does not "provide[ ] that no Hearsay objections [will] be entertained regarding the medical

evidence" (Doc. 18, at 12), but instead that "there will be no hearsay objection to the *receipt*"

of "[a]ll documents, including medical records and reports" (emphasis added). Plaintiff's

20

argument thus overstates the breadth of the Arbitration Agreement by conflating the ability to object to medical testimony with the ability to object to the receipt into evidence of medical records and reports.

In addition to Plaintiff's misrepresentations of the scope of the Arbitration Agreement's provisions, Plaintiff further does not provide any legal support for the proposition that the full "rules of evidence" must be strictly applied in order for a Court to find that a plaintiff was afforded a full and fair opportunity to litigate the issues in the prior action.

In support of his assertion that "the Third Circuit recognizes that it would be unfair to apply collateral estoppel to a Plaintiff's case if the arbitrator was not bound by the rules of evidence or prevailing caselaw because the Plaintiff cannot be said to have fully litigated his/her case" (Doc. 18, at 11-12), Plaintiff cites to two District Court cases: *Novinger Gp., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 5378288 (M.D.Pa. 2008), and *Gallagher v. Ohio Cas. Ins. Co*, 2014 WL 1386990 (E.D. Pa. 2014). Neither case aids Plaintiff in his argument.

In *Novinger*, the District Court found that the arbitral adjudication was final and that the plaintiffs were collaterally estopped from relitigating their contractual/warranty issues. In reaching this conclusion, the Court stated that "[a]n arbitration proceeding affords a full and fair opportunity to litigate when it entails the 'essential elements of adjudication,' including the right of parties to present evidence and legal argument in support thereof. RESTATEMENT § 83." 2008 WL 5378288, at *12. The Court further explained that,

> [it] is mindful of the Third Circuit's admonition against application of collateral estoppel to arbitral awards absent extreme care. *See Witkowski* [*v. Welch*, 173

21

F.3d 192, 206 (3d Cir. 1999)] (warning that doubts about collateral estoppel's application to arbitration awards "should usually be resolved against its use"). Procedures may vary from one arbitration procedure to the next, and arbitrators are bound neither by the prevailing case law or the applicable rules of evidence. *See, e.g., Universal Am. Barge Corp. v. J-Chem, Inc.,* 946 F.2d 1131, 1137 (5th Cir. 1991) (counseling courts to consider "the procedural adequacy of the arbitration proceeding"). Indeed, the basis of an award may be obscure and the claims actually decided in the arbitration unclear. *See, e.g., Postlewaitte v. McGraw-Hill,* 333 F.3d 42, 48-49 (2d Cir. 2003). Consequently, courts should ensure that an arbitration proceeding observed certain signposts of formality before applying estoppel. When procedures hew closer to traditional litigation, however, it is appropriate to afford preclusive effect to issues adjudicated in the arbitration.

*Id.* at *13.

The District Court in *Novinger* found that the plaintiffs had been afforded a full and fair opportunity to litigate the issues during the arbitration, relying on the following findings: Plaintiffs initiated the arbitration proceedings "by filing a complaint-like statement of claims"; both parties "were afforded the opportunity to offer pleadings in response"; each party was represented by counsel; the proceedings lasted eight days and were held before the full arbitration panel; and live testimony, evidence, and argument were presented at the hearing. The Court rejected the plaintiffs' suggestion that because the arbitration panel did not allow depositions, this precluded them from a full and fair opportunity to litigate their claims, finding that "plaintiffs had access during the arbitration to all of the key players involved in the contested sales" and "[t]he mere fact that they were required to elicit testimony before the arbitration panel, rather than via deposition, has no effect on plaintiffs' opportunity to fully and fairly litigate their claim." *Id.* at *12.

22

In *Gallagher*, the District Court declined to apply collateral estoppel to the plaintiff's claims, but nevertheless found that "the definition of 'underinsured motor vehicle' under the MVFRL and [Plaintiff's] Policy, as well as her Policy's exhaustion clause, sufficiently preclude [Plaintiff's] federal claim for underinsured motorist insurance coverage." 2014 WL 1386990, at *7.[9] However, in rejecting the defendant's argument that collateral estoppel precluded the plaintiff's claims, the Court did not analyze whether the plaintiff had a full and fair opportunity to litigate her claims. Rather, the Court only noted that it was "not persuaded that the private non-binding arbitration resulted in a final judgment" where, once the assessment of damages was made by the arbitrator, the plaintiff refused the amount and continued in the state action, only later settling the state court action. *Id.* at * 6.

In the present action, following the commencement of Shiffer's state court action against Malysa, the parties entered into a "Binding Arbitration Agreement"; an Agreement which was voluntarily entered into and the subject of bargaining and negotiation by Plaintiff's counsel prior to it being signed. At all times throughout the state court action and arbitration, Plaintiff was represented by counsel. During the course of the arbitration, Shiffer submitted two arbitration briefs which set forth the relevant law, factual assertions, and arguments, and at least 25 exhibits, including a number of medical records and expert reports. It is further undisputed that Plaintiff testified at the hearing. *See also, Incollingo,*

---

[9] Although Defendant in the present case only moves for summary judgment on the basis of collateral estoppel, the Court's reasoning in *Gallagher* with respect to the definition of "underinsured motor vehicle" under the MVFRL and the language of Plaintiff's policy as a separate basis for the grant of summary judgment may provide a further basis for the grant of summary judgment in the present action.

575 A.2d at 941 (finding full and fair opportunity to litigate issue where plaintiff testified, was represented by counsel, submitted "extensive documentation pertaining to his damages", and arbitrators "were apprised of the full range of [Incollingo's] claims"). Thus, similar to *Novinger* and *Incollingo*, Shiffer was afforded the opportunity to submit briefs in support of his position, was represented by counsel at all times, and was permitted to submit both documentary and testimonial evidence to the arbitrator. Plaintiff does not claim that he was prevented from presenting any evidence necessary to fully establish and prove his claims or that the arbitrator was not fully apprised of the evidence, arguments, or applicable law, which supported Plaintiff's claims at issue in the arbitration. In addition, unlike in *Gallagher*, here, Shiffer entered into a *binding* arbitration agreement and, upon receiving the arbitrator's award, took all subsequent actions set forth in the terms of the Binding Arbitration Agreement which were necessary to discontinue the state court action.

Plaintiff further has offered no support for any implication that Judge Wallitsch did not apply the controlling law. (*See* Doc. 18, at 11-12)(Plaintiff asserting that "the Third Circuit recognizes that it would be unfair to apply collateral estoppel to a Plaintiff's case if the arbitrator was not bound by the rules of evidence or prevailing caselaw because the Plaintiff cannot be said to have fully litigated his/her case"). Here, the first paragraph of the Binding Arbitration Agreement specifically provides that "[t]he Arbitrator will make his decision regarding all disputed issues using the law of this jurisdiction" (Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A, at ¶ 1). Plaintiff has not argued, nor provided any evidence,

that Pennsylvania law controlling the imposition of liability and assessment and award of damages in his personal injury action was not applied by the Arbitrator in evaluating the case and determining the final judgment.

Plaintiff has provided no evidence, but only counsel's own unsupported assertions in Plaintiff's brief in opposition to summary judgment, to demonstrate that the Arbitration Agreement and arbitration proceedings in any way deprived Plaintiff of a full and fair opportunity to litigate his claims or for a fair hearing. As the Third Circuit has explained, "[a] party does not have an opportunity for a full and fair hearing when procedures fall below the minimum requirements of due process as defined by federal law". *Witkowski v. Welch*, 173 F.3d 192, 205 (3d Cir. 1999) (internal quotation marks omitted). Plaintiff's assertion that he was deprived of a full and fair opportunity to litigate his claims during the arbitration because "the Arbitration Agreement specifically limited medical testimony to paper reports" (an inaccurate reading of the language of the Arbitration Agreement as explained *supra*) and "provided that no Hearsay objections would be entertained regarding the medical evidence" and therefore the arbitrator "was not bound by the rules of evidence or prevailing caselaw" (Doc. 18, at 12-13) fails. The record evidence demonstrates that the procedures utilized during the arbitration "hew[ed] closer to traditional litigation," *Novinger,* 2008 WL 5378288, at *13, and Plaintiff has not presented any evidence to show that the procedures can be said to have "fall[en] below the minimum requirements of due process as defined by federal law," *Witkowski,* 173 F.3d at 205. Nor has Plaintiff provided this Court with any legal

support for his suggestion that an arbitrator must strictly follow the "rules of evidence" in order for a later court to find that a party was provided a full and fair opportunity to litigate the issues. *Cf. Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968) ("In an arbitration case a court cannot act as a legal screen to comb the record for technical errors in the receipt or rejection of evidence by arbitrators, who in most cases are laymen. A fair accommodation between the words of the statute and the characteristic nature of arbitration would require that such an error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing. Even if full play is given to the inference that a party's effort to suppress the testimony of a witness indicates a weakness or lack of merit in his position, it must be recognized that the arbitrators here considered all of the other evidence which was presented to them by both sides on the merits of the issue. . . . While the suppression of evidence, if it occurred, may have had evidential value it cannot be said as a matter of law that it was decisive or that its exclusion was seriously harmful in the light of the other evidence in the case.").[10]

---

[10] It must further be noted that Plaintiff, in negotiating the language of the Binding Arbitration Agreement, voluntarily agreed to waive any hearsay objections to the receipt of medical records and reports by the Arbitrator and agreed that live or videotaped medical testimony would not be required. In contrast, the parties specifically agreed "to cooperate in the exchange of information by way of standard discovery" including any discovery "as agreed to by the parties and to which the parties would be entitled under the Pennsylvania Rules of Civil Procedure had suit been filed." (Binding Arbitration Agreement, Doc. 71-1, Ex. 3-A, at ¶ 15).

Finally, despite Plaintiff's asserts to the contrary, the terms of the Arbitration

Agreement do not serve to defeat collateral estoppel in this action. In support of his

argument that this Court "must honor the terms of the Arbitration Agreement," Plaintiff

argues that,

> in the present case, the terms of the Arbitration Agreement and the Release
> clearly eliminate the effect of collateral estoppel. Moreover, the Arbitration
> Agreement placed no limitations or restrictions on Plaintiff's ability to pursue his
> underinsured motorist's claim, thereby preventing the Court from rewriting the
> Agreement or giving it a construction that conflicts with the plain, ordinary, and
> accepted meaning of the words.

(Doc. 18, at 13-14). Plaintiff provides minimal explanation for his broad assertion that the

language of the Arbitration Agreement prevents this Court from finding that the doctrine of

collateral estoppel applies and his brief reliance on only two cases, *Harvey v. Liberty*

*Mutual*, 8 F.Supp.3d 666 (E.D. Pa. 2014) and *Muse v. Cermak*, 630 A.2d 891 (Pa. Super.

Ct. 1993), fail to advance his argument.

Under Pennsylvania law, "[a]rbitration is a matter of contract and, accordingly, in

construing the language of an arbitration provision, courts must resort to the rules of

contractual construction." *Muse*, 630 A.2d at 893. Here, the relevant language of the

Binding Arbitration Agreement is as follows: "This agreement is not intended to prevent the

Plaintiff from pursuing an underinsured motorist claim against his own insurance company."

(Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A, at ¶ 16).

In analyzing Plaintiff's assertion, the Court first looks to *Harvey v. Liberty Mutual*, an

Eastern District of Pennsylvania case cited by both parties in support of their respective

positions. The Court finds this case persuasive and highly instructive in light of the factual and legal similarities.

In *Harvey*, Plaintiff Edward Harvey's vehicle was rear-ended by a vehicle driven by Kyle Smedley. Smedley was insured by Erie Insurance and had a liability insurance policy with a limit of $250,000.00 and was also insured by an Erie Insurance umbrella insurance policy with a two-million-dollar limit of liability. Thus, Smedley had $2,250,000.00 in total liability coverage for the accident. 8 F.Supp.3d at 670.

Harvey filed a lawsuit against Smedley in state court for personal injuries and lost wages sustained as a result of the accident. Harvey, Smedley, and Erie Insurance agreed to proceed to binding arbitration in lieu of resolving the dispute in the Court of Common Pleas and entered into a binding arbitration agreement, which contained the following provisions:

- "The parties agree to discontinue the lawsuit, and the provisions contained herein are the manner in which the dispute which underlies the lawsuit will be resolved."

- "The payment resulting from an award in this matter of the arbitrator shall be a low of $0.00 and no more than $1,350,000.00. The award will be amended to reflect the above described perimeters to the extent it falls outside of them."

- "The binding high figure of $1,350,000.00 restricts the amount of the award for purposes of this arbitration only; it is not intended to have any preclusive effect on any subsequent proceeding including any underinsured motorist claim or arbitration relating to the accident of September 30, 2008."

*Id.*

Following the arbitration hearing, the arbitrator entered an award of $680,000.00 in favor of Harvey.

28

At the time of the accident, Harvey was driving a vehicle owned by his employer,

Spanpro Services Group, and was acting within the course of his employment. Spanpro

was insured under an automobile insurance policy issued by the Netherlands Insurance

Company, which contained the following provision:

A. Coverage
    1. We will pay all sums the "insured" is legally entitled to recover as
       compensatory damages from the owner or driver of an
       "underinsured motor vehicle". The damages must result from "bodily
       injury" sustained by the "insured" caused by an "accident". The
       owner's or driver's liability for these damages must result from the
       ownership, maintenance or use of an "underinsured motor vehicle".

    2. We will pay under this coverage only if Paragraph a. or b. applies:
      a. The limits of any applicable liability bonds or policies have been
        exhausted by payment of judgments or settlements; or . . . .

*Id.* at 670-671.

Prior to beginning the binding arbitration, Harvey's attorney notified Netherlands that

the underlying suit would be arbitrated. In response, a Senior Claims Specialist at

Netherlands responded in part: "Please be advised that The Netherlands Insurance

Company nor Ohio Casualty Insurance Company will be bound by any arbitration award.

[sic]. We also believe we are entitled to an offset of the entire $2,250,000 in available

coverage." *Id.* at 671.

Following the arbitration award, Harvey asserted an uninsured motorist claim against

Netherlands. Netherlands responded that the underlying arbitration precluded a UIM claim.

Thus, Harvey filed a lawsuit to recover UIM damages in state court which was removed by

Defendants to federal court in the Eastern District of Pennsylvania.

The Defendants thereafter filed a motion for summary judgment.

Defendants argue that the extent of Mr. Harvey's losses and damages was
determined in the binding arbitration with Mr. Smedley, and collateral estoppel
bars Mr. Harvey from asserting otherwise. Moreover, Defendants aver,
because there was sufficient coverage provided by the Erie policies -
$2,250,000 - to pay Mr. Harvey's $680,000 in damages, Mr. Harvey does not
have a viable UIM claim. Mr. Harvey responds that his total losses and
damages have not yet been adjudicated as required under the Netherlands
policy - instead, the parties agreed in the arbitration agreement and by way of
the letter from Netherlands Insurance Company to Mr. Harvey that the
arbitration award would not be binding.

*Harvey*, 8 F.Supp.3d at 673-674.

In evaluating whether Plaintiff's UIM claim against Defendants was precluded by the

doctrine of collateral estoppel, the Court analyzed the language of the Arbitration Agreement

entered into by Harvey, a party to both actions, and Smedley, and Erie Insurance, the

defendants in the first action. As explained by the Court:

Typically the factual and legal findings resulting from an arbitration are given
preclusive effect in subsequent civil litigation. *See, e.g., Incollingo v. Maurer,*
394 Pa.Super. 352, 356-60, 575 A.2d 939 (Pa.Super.Ct.1990) ("The issue
which we must resolve is whether a plaintiff, after having the question of
damages determined by a panel of arbitrators...may then proceed in a separate
civil action for the same damages... The appellant is not entitled to a second
bite of the apple...."); *Cassidy v. Prudential Property & Cas. Ins. Co.,* 40 Pa. D.
& C.3d 551, 556 (Pa.Com.Pl.1986) (granting summary judgment to Defendant
based on arbitrator's previous determination of main issue in case). Yet
because arbitration is a creature of contract law, "[w]here the terms of an
arbitration agreement limit the binding effect of the award in another
proceeding, [the court will] honor those terms as part of the agreement between
the parties." *Muse v. Cermak,* 428 Pa.Super. 199, 630 A.2d 891, 893 (1993).

A more complicated issue is presented if the parties to the original arbitration
who agree that the arbitration will have no preclusive effect are not in privy with
all the parties to the subsequent litigation; in that case, the terms of the
arbitration agreement will bind only the parties to the agreement. *Whirlpool
Corp. v. Penske Logistics, Inc.,* 2011 WL 7758325 (Pa.Com.Pl.2011).

*Id.* at 674-675.

The Court found that the provision in the Arbitration Agreement stating that the

binding high figure of $1,350,000.00 "is not intended to have any preclusive effect on any

subsequent proceeding including any underinsured motorist claim or arbitration relating to

the accident of September 30, 2008" did not, as Plaintiff argued, "provide that the award as

a whole has no preclusive effect." *Id.* at 675. Additionally, the Court explained that even if it

were to accept Plaintiff's interpretation of the Agreement, the provision at issue was not

enforceable against Defendants in the federal action because Netherlands was not a party

to the arbitration and was also not in privity with Harvey in the arbitration proceedings.

> While it is generally true that "an insurance company is in privity with its
> insured," *Catroppa v. Carlton,* 998 A.2d 643, 646 (Pa.Super.Ct.2010) (citing
> *Dally v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.,* 374 Pa.
> 476, 97 A.2d 795, 796 (1953)), this principle has important limits. *Id.* Privity
> requires "such an identification of interest of one person with another as to
> represent the same legal right." *Id.* (citing *Ammon v. McCloskey,* 440 Pa.Super.
> 251, 655 A.2d 549, 554 (1995)). The interests of Netherlands and Mr. Harvey
> were not so aligned during the arbitration as to represent the same legal right.
> For example, while it may have been in Mr. Harvey's interest to agree to a
> binding high figure lower than the full extent of Mr. Smedley's available
> insurance, Netherlands did not share this interest. Because the terms of the
> arbitration agreement bound only the parties to it and those in privity with
> parties, Netherlands is not bound by the provision regarding preclusive effect.

*Id.* at 676.

Finally, the Court rejected any suggestion that Netherlands' letter to Plaintiff's counsel acknowledging that Plaintiff had entered into binding arbitration with the carrier for the tortfeasor constituted a waiver of a collateral estoppel defense.

In *Muse v. Cermak*, the second case upon which Plaintiff relies in support of his argument that the terms of his Arbitration Agreement prevent the application of collateral estoppel to his current lawsuit, the Superior Court of Pennsylvania reversed the lower court's order granting a motion to preclude any evidence concerning liability on the basis that prior arbitration proceedings collaterally estopped any subsequent determination of liability. In that case, Naomi Muse and Jerry Cermak were involved in a two-vehicle collision. At the time of the accident, Cermak was an employee of Falcon Transportation acting in the scope of his employment. As a result of the accident, Muse sustained physical injuries and damage to her vehicle. Muse's insurer, State Farm Mutual Insurance Company paid for her property damage and then sought reimbursement from Cermak's insurer, Crum and Foerster. As there was a dispute as to who was responsible for the damage to Muse's vehicle, the insurance companies proceeded to arbitration under the Nationwide Inter-Company Arbitration Agreement. As a result of the Arbitration, Cermak and his employer were found negligent and liable for the damage to Muse's vehicle. Muse then filed a separate complaint in the Court of Common Pleas of Delaware County against Cermak and Falcon Transportation for her personal injury damages sustained as a result of the vehicle accident. 630 A.2d at 892.

In finding that collateral estoppel did not apply, the Superior Court quoted to the following language of the Arbitration Agreement:

> A decision of a panel on a claim submitted under the Nationwide Inter-Company Arbitration Agreement is not res judicata to the same or similar issues in companion claims or any other claim between the arbitrating companies. It is conclusive only of the controversy in the claim submitted to the panel and has no legal or moral effect on any other claim or suit arising out of the same accident or occurrence

*Id.* at 893. The Superior Court thus explained that the terms of the Arbitration Agreement eliminated collateral estoppel because the "Arbitration Agreement clearly provides that any decision made pursuant to the agreement will not have any preclusive effect on the outcome of similar or identical issues in companion claims. Where the terms of an arbitration agreement limit the binding effect of the award in another proceeding, we must honor those terms as part of the agreement between the parties." *Id.*

Plaintiff's reliance on *Muse* is misplaced. In that action, the language of the Arbitration Agreement dictated that a "decision of a panel on a claim submitted under the Nationwide Inter-Company Arbitration Agreement is not res judicata to the same or similar issues in companion claims or any other claim *between the arbitrating companies,*" 630 A.2d at 893. There, the parties in the second lawsuit were either a party in the prior arbitration proceeding or were in privity with a party in the prior arbitration proceeding. Thus, the Superior Court determined that because the terms of the arbitration agreement limited the binding effect of the award in another proceeding, "we must honor those terms *as part of the agreement between the parties,*" *id.*

33

However, in the present case, as in *Harvey*, Liberty Mutual was not a party to the prior arbitration proceedings or in privity with any party to the arbitration proceedings. Nor does Plaintiff argue that Liberty Mutual should be deemed to have been in privity with him for purposes of the enforceability of the arbitration agreement. Rather, only Shiffer, Malysa, and Malysa's insurance carrier agreed to the terms of the arbitration agreement. It is undisputed that Liberty Mutual was never informed that Shiffer entered into a binding arbitration agreement in the third party action until after Shiffer received the arbitration award and discontinued his action against Malysa.[11] (*See* Doc. 17, at ¶ 17). Shiffer cannot unilaterally now bind Liberty Mutual to a provision permitting a subsequent lawsuit where that insurance company was not party, or in privity with any party, who agreed to be bound by that enabling clause and was not even aware of the existence of any arbitration agreement in that action.

In addition, even if Liberty Mutual was in privity with Shiffer for purposes of the arbitration, Shiffer's claim that "the terms of the Arbitration Agreement and the Release clearly eliminate the effect of collateral estoppel" (Doc. 18, at 13) is without merit. "When the words of a contract are unequivocal, they speak for themselves, and a meaning other than that expressed cannot be given to them. This Court will not rewrite the contract or give it a construction that conflicts with the plain, ordinary, and accepted meaning of the words

---

[11] In fact, when requesting that Liberty Mutual waive its subrogation rights against Ann Malysa and Robert Malysa, Plaintiff's counsel inaccurately represented to Liberty Mutual that he had "received an offer to *settle* Mr. Shiffer's third-party claim . . . which Mr. Shiffer would like to accept in lieu of pursuing further litigation in the third party claim." (Doc. 17-1, Ex. 3-E) (emphasis added).

used." *Lindstrom v. Pennswood Village*, 612 A.2d 1048, 1051 (Pa. Super. Ct. 1992). Here, Plaintiff attempts to re-define the terms and meaning of the provision at issue. The Binding Arbitration Agreement states: "This agreement is not intended to prevent the Plaintiff from pursuing an underinsured motorist claim against his own insurance company." (Binding Arbitration Agreement, Doc. 17-1, Ex. 3-A, at ¶ 16). This language only conveys that the *intention* of the Agreement is not to prevent Plaintiff from pursuing a claim for UIM, provided Plaintiff has one, i.e. provided that Shiffer had been paid the full amount of the tortfeasor's policy limits and his injuries are asserted to present a claim of damages in excess of those limits. Otherwise stated, the Agreement is not intended to limit other rights which Plaintiff may have to recover for any damages to which he is entitled. Indeed, it is axiomatic that if the arbitrator had awarded Plaintiff a sum above $300,000, Plaintiff would have been entitled to pursue an UIM claim against his own insurer. However, an agreement that the arbitration is not intended to prevent Plaintiff from pursuing a UIM claim does not equate to an agreement that, if Plaintiff pursues a UIM claim, any affirmative defense, including the defense of collateral estoppel, is somehow barred or waived. This is particularly so where the defendants in the third party action had no interest in the provision at issue or reason to oppose it; the provision's inclusion in the Arbitration Agreement was of no significance to those Defendants and had no effect on them.

For the aforementioned reasons, Plaintiff's assertion that the language of the Arbitration Agreement precludes a finding of collateral estoppel must be rejected.[12]

This Court having found that collateral estoppel applies to the Arbitrator's award of $214,298.37, Shiffer necessarily cannot maintain a claim for underinsured motorists coverage. Here, Shiffer's Underinsured Motorists Coverage Policy with Liberty Mutual stated, in relevant part:

> INSURING AGREEMENT
> B. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

---

[12] Similar to Plaintiff's argument discussed herein that "the Court must honor the terms of the Arbitration Agreement", Plaintiff also argued in his brief in opposition to summary judgement that "both the Arbitration Agreement and the Release in the present case specifically provide that the effects of collateral estoppel do not apply to subsequent proceedings." (Doc. 18, at 6). The Court rejects this argument for the same reasons already explained. In addition, Plaintiff's argument in support of his position specifically supports this Court's reasoning throughout this opinion. In his brief in opposition to summary judgment, Plaintiff states:

> Civil matters frequently proceed through various forms of Alternative Dispute Resolution (ADR), including arbitration, as well as formal court procedures. As a result, parties commonly enter into arbitration agreements as a tool of settlement and consent to low/high parameters in an effort to control the risk for the respective arbitrating parties. In certain circumstances, an Arbitrator may issue an award in excess of the available policy limits for the defendant. In those situations, the low/high parameter would operate to reduce that award to the high of the low/high parameter. *If the resulting award exhausts that defendant's policy limit, the plaintiff frequently will file a subsequent action seeking Underinsured Motorist Benefits (UIM) against his own insurer.* That exact process occurred in both the present case, as well as the Pennsylvania Superior Court case of *Fernandez v. Erie Insurance Group*, WL 1382782 (Pa. Super. April 16, 2017).

(Doc. 18, at 6-7) (italics added). Here, the resulting award *did not* exhaust Malysa's policy limits, and therefore Plaintiff's explanation that a plaintiff will frequently file a UIM claim against his own insurer when the policy limits have been exhausted offers him no help. Further, Plaintiff blatantly misrepresents the facts of the present case. While Plaintiff is correct that in *Fernandez* the arbitrator's award exceeded the defendant's policy limits, thus allowing Plaintiff to bring a claim against his own insurer, Shiffer's representation that this "exact process occurred in both the present case" and *Fernandez* is untrue – here, again, the arbitrator awarded Shiffer less than the policy limits and thus Plaintiff *did not* exhaust the defendant's policy limits in the third party action.

1. Sustained by an "insured"; and
2. Caused by an accident.

("Policy", Doc. 17, Ex. 2, at 45). The Policy further defined "underinsured motor vehicle" as

follows:

D. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

(*Id.*). *See also*, 75 Pa. C.S. § 1702 (defining "underinsured motor vehicle" as "[a] motor

vehicle for which the limits of available liability insurance and self-insurance are insufficient

to pay losses and damages.").

Here, the collateral estoppel effect of the Arbitration Award, in conjunction with the

MVFRL, the language of Shiffer's Policy, and Liberty Mutual's agreement to waive their

subrogation rights against Malysa with the advisement that they would take full credit for the

$300,000 liability limits in any UIM claim, result in a conclusion that Shiffer is precluded from

asserting a claim against Liberty Mutual for any further damages as a result of accident on

March 14, 2013. As the Arbitration Award is deemed to be a final determination of the

damages to which Shiffer is entitled, it is beyond question that Shiffer cannot be considered

"underinsured" as his award of $214,298.37 is less than the $300,000 available to him

through Malysa's insurance carrier. Shiffer has thus been fully compensated for any loss or

damages. *See e.g., Sterling*, 630 A.2d at 1228 ("a plaintiff is collaterally estopped from

asserting a claim for damages against a tortfeasor where the plaintiff has already pursued

the same claim and been awarded full compensation in a prior uninsured motorist action. *Full compensation is demonstrated where the amount awarded is less than the coverage of the insurance.*")(emphasis added).

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Liberty Mutual Fire Insurance Company's Motion for Summary Judgment (Doc. 15).

A separate Order follows.

Robert D. Mariani
United States District Judge